101 N.J. Super. 483 (1968)
244 A.2d 699
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ULYSSES G. MONTAGUE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1968.
Decided June 25, 1968.
*484 Before Judges GOLDMANN, KILKENNY and CARTON.
Mr. Mark Gasarch argued the the cause for appellant (Mr. Peter Murray, Public Defender, attorney; Mr. Richard Newman, Deputy Public Defender, of counsel).
Mr. Matthew J. Scola, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, County Prosecutor of Essex County, attorney).
*485 PER CURIAM.
Defendant Ulysses Montague and co-defendant Clarence Lollie were indicted for assault and battery upon Newark police officer James Nance, in violation of N.J.S. 2A:90-4. Montague was also indicted for threatening the life of Officer Nance by pointing a revolver at him contrary to N.J.S. 2A:113-8. The jury found defendant guilty of both offenses and acquitted Lollie. Defendant received consecutive State Prison sentences of 1-2 years on the threat to life charge and 2-3 years on the assault and battery charge. He appeals.
Officer Nance testified that while on duty on May 23, 1966, at about 2:53 P.M., he observed a Ford Mustang traveling south on Johnson Avenue in Newark without a valid motor vehicle inspection sticker. At that time he was on a police motorcycle, in uniform and wearing a police helmet. He stopped the vehicle and Lollie, the driver, got out and proceeded to discuss the matter with him. Defendant and his niece and nephew, Lilliteen and Cornell Rochelle, remained in the car.
While Lollie and Nance were talking, 16-year-old Cornell began blowing the horn of the vehicle to attract the attention of a pedestrian named Charles Jones. Nance said he went over to the car and told the boy to stop blowing the horn as it was a violation of the law. Returning to his discussion with Lollie, Nance observed that Lilliteen began sounding the horn loudly. When he told her to stop, Lilliteen said, according to Nance, "You don't tell me nothing. I'm not driving this car." Nance replied that it was against the law. Lilliteen then began to curse and, despite Lollie's attempt to calm her, got out of the Mustang and approached Nance. He placed her under arrest and tried to call a patrol car on his radio.
At this point Lilliteen started to walk away and as the officer attempted to restrain her, she began to resist physically. Lollie grabbed Nance's arm when the officer tried to handcuff Lilliteen and Nance knocked him to the ground. Defendant, who had been in the car up to this time, got out *486 and tackled Officer Nance. Nance testified that while he and defendant were struggling, Lollie was holding his arms, Lilliteen was kicking him and defendant was shouting to Lollie to "hold his arm while I get his gun." Defendant succeeded in pulling the pistol from its holster, pointed it at Nance and said: "I will shoot you. Keep coming. You don't think I will shoot you?" Nance lunged for the gun and defendant hit him on the side of the head with it.
Nance managed to call for help on his motorcycle radio. When the other officers arrived, Nance instructed them to pursue Lollie who had fled and he went after defendant. Asked to surrender the revolver, defendant refused and was subsequently subdued by several officers.
James Barrett and Alvin Picker, members of the faculty at nearby South Side High School, testified for the State. They were witnesses to the entire altercation and substantially corroborated Nance's testimony. Officer Kneipher, one of the policemen who answered the call for help, confirmed Nance's account as to taking the gun from defendant and subduing him.
Defendant's version of the incident is considerably at odds with that of Officer Nance. He said he did not hear the discussion between Nance and Lollie but he did hear Nance's warning to Lilliteen about blowing the horn. According to defendant, however, Nance had said to her, "Stop blowing the damn horn or I'll give Clarence another ticket." Lilliteen then got out of the car, went around to the rear where Nance and Lollie were standing and called Nance "a Nigger cop in uniform." Defendant said he heard Nance reply, "Don't call me no Nigger cop or I'll smack you" and Lilliteen retort, "I'll smack you back," but he did not hear Nance tell Littiteen she was under arrest. The next thing he knew, the officer was hitting Lilliteen and had her by the throat. When Lollie tried to intervene, he was knocked away. Defendant stated that he stepped out of the car and attempted to pull the officer away from his niece but when Nance reached for his gun, he jumped on him and they struggled on the ground. *487 Defendant got the gun and refused to return it for fear Nance would shoot him. He denied hitting the officer with the gun but admitted that he struck him on the head when Nance lunged at him. He also denied threatening Nance with the gun or pointing it at him. After the other officers arrived at the scene, defendant said, he surrendered the gun voluntarily and was thereafter beaten by one of the policemen, handcuffed and taken away.
Four other witnesses testified for the defense: Lollie, Lilliteen, Cornell and Charles Jones, the pedestrian whose attention Cornell and Lilliteen were trying to attract by blowing the horn. Their testimony substantially corroborated defendant's account of the episode.
Defendant's first contention is that the trial judge committed reversible error when he required defendant's attorney to turn over to the prosecution his own notes of interviews with certain witnesses, particularly Charles Jones, the pedestrian bystander. These notes were given to the prosecutor and were used in cross-examining Jones as to inconsistencies between his testimony on direct and statements during the interview.
The State concedes that the trial judge's action was not authorized by the rules of court in effect at the time of trial in May 1967 or by the express provisions of rules currently in force, namely R.R. 3:5-11 and 3:7-3A. It argues, however, that these rules and the spirit of certain New Jersey decisions, particularly State v. Hunt, 25 N.J. 514 (1958), should be read to permit the trial judge's ruling to stand.
We disagree. The cited rules relate to discovery by a defendant of certain matters in the prosecutor's files, including statements made by a witness about to testify for the State. But there is no rule that would support, either by express language or by implication, the trial judge's order that the defense attorney produce for the State's inspection his own notes of an interview with a prospective witness. Nor can we read State v. Hunt, supra, as authorizing the ruling below. That case involved a wholly different question and *488 held only that a defendant may compel production of notes made and used by a witness for the State to refresh his recollection before testifying.
Moreover, we are satisfied that the notes here in question represented the work product of defendant's attorney and, under the doctrine of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), production should not have been compelled. The fears therein expressed with regard to the inviolability of an attorney's thoughts and the possibility of inefficiency, unfairness and sharp practice are equally applicable to the setting of a criminal case.
We have no doubt that the error was prejudicial to defendant's cause. Jones was the first and key witness for the defense and his impeachment through the use of the notes clearly undermined the effect of not only his testimony but that of other witnesses who appeared in defendant's behalf. In addition, both the prosecutor in summation and the trial judge in his charge brought home to the jury the inconsistencies between Jones' testimony and his statements as recorded in defense counsel's notes. The jury may well have been influenced by this erroneously permitted evidence and we therefore conclude that the conviction must be reversed. See State v. Green, 46 N.J. 192, 197 (1965).
Although not necessary to disposition of this appeal, we deem it appropriate, in view of the likelihood of a retrial, to comment briefly upon defendant's other claims of error.
Defendant contends that the trial judge erroneously charged the jury with respect to the right of a person to go to the aid of another whom he reasonably believes is the victim of an unlawful assault. In support thereof he relies upon the so-called "mens rea rule" of State v. Fair, 45 N.J. 77 (1965), and State v. Chiarello, 69 N.J. Super. 479 (App. Div. 1961), certification denied 36 N.J. 301 (1962), that justification for intervention by a third party in defense of another depends not on the facts as they actually existed but as the third party reasonably perceived them at the time. The State, on the other hand, asserts the applicability of State *489 v. Koonce, 89 N.J. Super. 169 (App. Div. 1965), holding that "a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal * * *." 89 N.J. Super., at p. 184 (italics added).
We see no conflict between these rules. On the contrary, as the italicized language just quoted clearly demonstrates, Koonce incorporates the mens rea element espoused in Fair and Chiarello. Moreover, we have no doubt as to the applicability of Koonce to the intervention of a third party as in the present case. However, our review of the charge given below leads us to believe that the jury was not informed that defendant's knowledge or reasonable belief as to Nance's authority and performance of his duty was a subject for consideration. On any retrial, such information, with an appropriate explanation, should be given, for defendant has a right to have the reasonableness of his belief that Nance was attacking Lilliteen taken into account. See State v. Koonce, supra, at p. 184.
There is no merit to defendant's third argument that the offense of threatening the officer's life (N.J.S. 2A:113-8) merged with or was preempted by the more specific statute condemning an assault and battery upon a police officer (N.J.S. 2A:90-4). The elements of the two offenses are separate and distinct and the trial judge correctly sent both charges to the jury. See, e.g., State v. Craig, 48 N.J. Super. 276, 279 (App. Div. 1958).
Finally, defendant claims the sentences imposed were manifestly excessive. In effect, he was sentenced to not less than three nor more than five years in prison for both crimes. Since the statutory maximum for these offenses was 22 years, we find no abuse of discretion.
Reversed and remanded for new trial.