242 N.J. Super. 532 (1990)
577 A.2d 852
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JULIUS MORRIS, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HARRY SAXON, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued and Submitted May 30, 1990.
Decided July 17, 1990.
*534 Before Judges MICHELS, DEIGHAN and BROCHIN.
Wilfredo Caraballo, Public Defender, attorney for appellant Julius Morris (Michele A. Adubato, Designated Counsel, of counsel and on the brief).
*535 Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Larry R. Etzweiler, Deputy Attorney General, of counsel and on the brief).
Marc C. Gettis, Designated Counsel, argued the cause for appellant Harry Saxon, Jr. (Wilfredo Caraballo, Public Defender, attorney; Marc C. Gettis, of counsel and on the brief).
Larry R. Etzweiler, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Larry R. Etzweiler, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendants Julius Morris (Morris) and Harry Saxon, Jr. (Saxon) were convicted of escape in violation of N.J.S.A. 2C:29-5a. Defendants' motion for a new trial was denied. The trial court committed Morris to the custody of the Commissioner of the Department of Corrections for five years with a two-and-one-half year period of parole ineligibility, which sentence to be served consecutively to the sentence he was then serving. In addition, the trial court assessed Morris a $30 Violent Crimes Compensation Board penalty. The trial court granted the State's motion pursuant to N.J.S.A. 2C:43-7 and N.J.S.A. 2C:44-3 for an extended term on the ground that Saxon was a persistent offender, and committed him to the custody of the Commissioner of the Department of Corrections for a term of eight years with a four-year period of parole ineligibility, which sentence was also to be served consecutively to the sentence that he was then serving. The trial court also imposed a $30 Violent Crimes Compensation Board penalty. Defendants appealed and we consolidated the appeals.
According to the State's proofs, Leesburg State Prison is a large penal institution located in Cumberland County. In addition to a minimum security farm area, the prison has a medium security complex which is surrounded by a fence. The medium *536 security complex consists of six housing units which are labeled A through F. Behind the E and F housing units is an infrared alarm system. When the infrared beam is broken an alarm registers in the prison's central office. At the time of the incident in question, Saxon was housed in Unit E and Morris in Unit F.
On August 11, 1986, at approximately 8:55 p.m. the infrared alarm sounded in the central office. Correction officers dispatched to the area behind Units E and F noticed that a shield on one of the infrared alarm posts had been bent down. In addition, there was a footprint and blood on the post itself. Later, other officers found a pair of tin snips near the damaged post. Additionally, it was discovered that one of the windows in Unit F was broken and that the bars were bent. Blood was also found on the pavement outside the window. A count of the prison population at approximately 9:15 p.m. revealed that Saxon and Morris were missing along with two other inmates, Hiawatha Bibby and Albert McNeil. A search of Saxon's cell revealed that a laundry bag was arranged in the bed to look like a body.
On August 12, 1986, the day after the inmates left the medium security area, search patrols were dispatched to look for the missing men. At approximately 6:44 p.m. Officer Emil Gardner, one of the searching officers, responded to a restaurant located some five miles from the prison grounds. Behind the restaurant is a marshy area covered with high reeds which leads into a forest. Officer Gardner entered the marshy area and noticed that a path had been made in the reeds. Gardner followed the path and found inmates Saxon, Morris and McNeil crouched down in a clearing. Defendants and the other inmate were apprehended and brought back to the prison.
Defendant Morris seeks a reversal of his conviction, or alternatively, a modification of his sentence on the following grounds set forth in his brief:

*537 I. THE TRIAL COURTS DECISION TO PRECLUDE DEFENDANT FROM PRESENTING THE AFFIRMATIVE DEFENSE OF DURESS AND/OR NECESSITY WAS ERROR.
II. THE COURTS DECISION TO ALLOW ADMISSION OF PRIOR CONVICTIONS OF THE DEFENDANT WAS ERROR.
III. THE TRIAL COURTS LIMITATION OF THE QUESTIONING OF CERTAIN WITNESSES DENIED THE DEFENDANT A FAIR TRIAL (Partially raised below).
IV. IT WAS ERROR FOR THE COURT TO FAIL TO CHARGE THE JURY ON DURESS.
V. COMMENTS MADE BY THE STATE DURING SUMMATION WERE IMPROPER AND DENIED THE DEFENDANT OF A FAIR TRIAL (not raised below).
VI. THE PERIOD OF PAROLE INELIGIBILITY IMPOSED UPON THE DEFENDANT IN HIS SENTENCE SHOULD BE VACATED (not raised below).
Defendant Saxon also seeks a reversal of his conviction or, alternatively, a modification of his sentence on the following grounds:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PRECLUDING DEFENDANT FROM RAISING THE AFFIRMATIVE DEFENSES OF DURESS AND/OR NECESSITY.
II. THE PROSECUTOR'S SUMMATION FAR EXCEEDED THE BOUNDS OF PROPRIETY, THEREBY DEPRIVING DEFENDANT OF A FAIR TRIAL.
III. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT TO AN EXTENDED TERM OF IMPRISONMENT.
IV. THE TRIAL JUDGE ERRED IN IMPOSING THE FOUR YEAR PERIOD OF PAROLE INELIGIBILITY.
We have carefully considered these contentions and all of the arguments advanced by both defendants in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). However, further comment may be helpful with respect to some of these contentions.

I.
We are satisfied that the trial court properly conducted a pretrial hearing on whether to allow defendants to raise the defense of duress and necessity. The procedure that was followed here conforms to the practice approved by the United States Supreme Court in United States v. Bailey, 444 U.S. 394, *538 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). We are also satisfied that the trial court properly precluded defendants from presenting their duress and necessity defense to the jury. We, therefore, affirm these pretrial rulings substantially for the reasons expressed by Judge Serata in his opinion reported as State v. Saxon, 226 N.J. Super. 653, 545 A.2d 255 (Law Div. 1988).
Additionally, we point out that defendants' duress defense is specifically precluded by the statute proscribing escape. N.J.S.A. 2C:29-5 provides:
Escape.
a. Escape. A person commits an offense if he without lawful authority removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. "Official detention" means arrest, detention in any facility for custody of persons under charge or conviction of a crime or offense, or committed pursuant to chapter 4 of this Title, or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but "official detention" does not include supervision of probation or parole, or constraint incidental to release on bail.
b. Permitting or facilitating escape. A public servant concerned in detention commits an offense if he knowingly or recklessly permits an escape. Any person who knowingly causes or facilitates an escape commits an offense.
c. Effect of legal irregularity in detention. Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under this section if the escape is from a prison or other custodial facility or from detention pursuant to commitment by official proceedings. In the case of other detentions, irregularity or lack of jurisdiction shall be a defense only if:

(1) The escape involved no substantial risk of harm to the person or property of anyone other than the detainee; or
(2) The detaining authority did not act in good faith under color of law.

d. Grading of offenses. An offense under this section is a crime of the second degree where the actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape. Otherwise it is a crime of the third degree. [Emphasis added].
Although N.J.S.A. 2C:29-5(c) has not been construed by a New Jersey court, the legislative history makes absolutely clear that deficiencies in prison life do not justify escape. As the drafters of the Code wrote:
5. Legal Irregularities in Custody. Existing law is confused and contradictory on the question of escape from an official detention which is in some *539 respect illegal. Sometimes the line is drawn between defects which render the detention "void" and those which render it "voidable."
Subsection c makes a distinction, not unlike that formerly made in the Federal escape law, between detention in a prison or pursuant to a judicial or quasi-judicial commitment, and what might be called "executive" detention, principally arrest. There is no defense of illegality except in relation to these executive detentions. As to them, clause (1) of Subsection c provides, in effect, that non-violent escapes from illegal arrest are not criminal. Clause (2) excludes from criminal escape even violent efforts to escape in clear cases of abusive arrest by officers who know there is no basis for the arrest. This does not mean that the use of violence in such cases is approved. The violence may constitute criminal assault, but it does not render the departure from such illegal custody a criminal escape.

The Section does not permit an escape to be justified by proof that the conditions of confinement were bad even to the point of violating state legal requirements. However, a right of the prisoner to save his life by leaving a burning prison, for example, has always been recognized and would be preserved under our general provisions as to justification. MPC T.D. 8, pp. 136-137 (1958).
No direct New Jersey authority on these problems was found. The decisions in State v. Montague, 55 N.J. 387, 403-406 [262 A.2d 398] (1970), modifying 101 N.J. Super. 483 [244 A.2d 699] (App.Div. 1968) and in State v. Koonce, 89 N.J. Super. 169 [214 A.2d 428] (App.Div. 1965), lead to the conclusion that our courts would reach of position similar to the Code. [Final Report of the New Jersey Criminal Law Revision Commission, Vol. II, 288 (1971) (emphasis added)].
The decision of the Pennsylvania Supreme Court in Commonwealth v. Stanley, 498 Pa. 326, 446 A.2d 583 (1982), lends further support to the conclusion that less than adequate prison conditions do not give a prisoner a right to leave custody. In Stanley, the Pennsylvania Supreme Court construed Pennsylvania's escape statute, which contains the same exclusion found in N.J.S.A. 2C:29-5(c), to bar a duress/necessity defense founded on poor prison conditions. The Court wrote:
The "escape" section of the Crimes Code specifically forecloses certain defenses:
§ 5121. Escape....
(c) Effect of legal irregularity in detention.  Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, shall not be a defense to prosecution under this section.

Claims of overcrowding and poor medical attention pertain to "irregularity in maintaining detention" and the court below properly refused to entertain them. The policy behind this statute is sound: self-help remedies which jeopardize the safety of citizens of this Commonwealth, the safety of *540 prison officials, and the orderly administration of prisons cannot be condoned. Moreover, the remedies of habeas corpus and civil rights actions under 42 U.S.C. § 1983 are available to prisoners protesting prison conditions. [Id. at 589 (emphasis added; citations omitted)].
Defendants' claims are further foreclosed by the specific language of the duress and necessity statutes. N.J.S.A. 2C:2-9, which sets forth the defense of duress provides:
Duress. a. Subject to subsection b. of this section, it is an affirmative defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.
b. The defense provided by this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was criminally negligent in placing himself in such a situation, whenever criminal negligence suffices to establish culpability for the offense charged. In a prosecution for murder, the defense is only available to reduce the degree of the crime to manslaughter.
c. It is not a defense that a woman acted on the command of her husband, unless she acted under such coercion as would establish a defense under this section. The presumption that a woman, acting in the presence of her husband, is coerced is abolished.
Likewise, N.J.S.A. 2C:3-2, the necessity statute provides:
Necessity and other justifications in general.
a. Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity to the extent permitted by law and as to which neither the code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
b. Other justifications in general. Conduct which would otherwise be an offense is justifiable by reason of any defense of justification provided by law for which neither the code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
Careful review of defendants' proffer of evidence reveals that at no time was either defendant coerced to escape by the use or threatened use of unlawful force. While it may be that conditions at Leesburg State Prison were not pleasant, it cannot be said that the situation was so life threatening that defendants had to escape immediately to save themselves. In short, *541 defendants have not satisfied the statutory elements of duress and were, therefore, not entitled to raise that defense at trial.
Similarly, defendants have not established the elements of necessity as provided for in the statute. The defense of necessity is strictly limited under the Code. As our Supreme Court held in State v. Tate, 102 N.J. 64, 70, 505 A.2d 941 (1986):
In that one short paragraph the Legislature managed to set forth three limiting criteria governing the defense: (1) conduct is justifiable only to the extent permitted by law, (2) the defense is unavailable if either the Code or other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved, and (3) the defense is unavailable if a legislative purpose to exclude the justification otherwise plainly appears.
In Tate, the Court rejected defendant's claim that he needed marijuana to treat his quadriplegia and that he was immune from prosecution under the necessity doctrine. The Court reasoned in part:
If we follow the mandate to limit the exercise of our discretion in accordance with these governing criteria, the conclusion is inescapable that Michael Tate is not entitled to the defense of "necessity" in this case. First, the conduct is not "permitted by law." Second, other code provisions have dealt with the specific situation involved. And third, legislative intent to exclude the justification urged here does "otherwise plainly appear." Hence, the legislature has made clear its determination that this Court shall not have the discretion to make the "necessity" defense available to this defendant. [Id. at 70, 505 A.2d 941].
Applying the above principles here, it is clear that defendants are without grounds to assert necessity under the statute. First, escape from prison is precluded by law. Secondly, N.J.S.A. 2C:29-5(c) deals with the situation involved here  it bars defenses based on irregularities in confinement. Finally, the legislative purpose of preventing prisoners from leaving confinement without authorization would be circumvented if a necessity defense to escape was recognized.
Furthermore, resort to common law necessity here would be error. As the Tate Court wrote:

Because the defense of "medical necessity" is clearly precluded by statutory language, we need not look to the common-law defense of "necessity" for guidance. This Court's common-law gap-filling authority with regard to the criminal law should be exercised only when there is in fact a gap to be filled. There is none. Moreover, even were we to resort to the common law, *542 we conclude, contrary to the position of our dissenting colleagues, that even under common law, a "necessity" defense would not be available in this case.
The common-law defense of "necessity" is often referred to as the "choice-of-evils" defense. W. LaFave and A. Scott, Handbook on Criminal Law 382 (1972) (LaFave & Scott). Conduct that would otherwise be criminal is justified if the evil avoided is greater than that sought to be avoided by the law defining the offense committed, or, conversely, if the conduct promotes some value higher than the value of compliance with the law. Arnolds & Garland, The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil, 65 J.Crim.L.C. & P.S. 289 (1974). The defense is based on public policy. In essence it reflects a determination that if, in defining the offense, the legislature had foreseen the circumstances faced by the defendant, it would have created an exception. It would have balanced the competing values and chosen the lesser evil. Obviously, then, the defense is available at common law only when the legislature has not foreseen the circumstances encountered by a defendant. If it has in fact anticipated the choice of evils and determined the balance to be struck between the competing values, defendants and courts alike are precluded from reassessing those values to determine whether certain conduct is justified. LaFave & Scott, supra, at 382. [Id. at 73-74, 505 A.2d 941 (emphasis added)].
The legislature has already balanced the competing values and has decided that less than ideal prison conditions do not justify escape. We are not free to re-weigh the factors involved and reach a different conclusion.
Moreover, there is no merit to defendant Morris' claims that the trial court erred in failing to instruct the jury on duress on the strength of Bibby's comments to him during the escape. Defendant did not establish that he acted under duress and necessity as defined by the Code. Defendant has not proffered any evidence that Bibby used or threatened unlawful force against him. Rather, the evidence reveals that defendant saw an opportunity to leave prison and voluntarily took advantage of it. The fact that Bibby may have told Morris to escape with him does not rise to the level sufficient to permit defendant to avail himself of a statutory duress defense.

II.
Contrary to defendants' claim, the prosecutor did not overstep the bounds of propriety or legality in summation when she challenged Saxon's claim that he intended to return to *543 custody following the escape. Saxon testified under direct examination that he intended to turn himself "into the federal marshalls for transport to a federal institution." The prosecutor's comment that it is hard to believe that defendant escaped only to go to another prison was not improper. The prosecutor's remark in this regard did nothing more than discuss facts in evidence and, as such, did not constitute error, let alone plain error.
Similarly, the prosecutor's statement that defendant had to be "hunted down like a dog in a patch of reeds" was harmless. In point of fact, defendants were captured at gunpoint in thick underbrush. Although the comment may have been dramatic and graphic, it was supported by the proofs, it was not outrageous or egregious and did not deprive defendants of a fair trial.

III.
We are also satisfied that the trial court did not err in admitting Morris' prior convictions for purposes of impeachment in violation of State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978).
Admission of convictions is governed by N.J.S.A. 2A:81-12 which provides:
Interest or conviction of crime as affecting credibility.
For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his conviction of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence....
The decision to admit a prior conviction under this statute against a criminal defendant "rests within the sound discretion of the trial judge." State v. Sands, supra, 76 N.J. at 144, 386 A.2d 378; see State v. Whitehead, 104 N.J. 353, 358, 517 A.2d 373 (1986); State v. Hutson, 211 N.J. Super. 49, 53, 510 A.2d 706 (App.Div. 1986), aff'd, 107 N.J. 222, 526 A.2d 687 (1987). The trial judge has wide latitude in this area. State v. Sands, supra, 76 N.J. at 144, 386 A.2d 378. "Ordinarily evidence of *544 prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant." Id. at 144, 386 A.2d 378.
When exercising the broad discretion entrusted to them, trial judges should be guided by the following principles:
The key to exclusion is remoteness. Remoteness cannot ordinarily be determined by the passage of time alone. The nature of the convictions will probably be a significant factor. Serious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving. In other words, a lapse of the same time period might justify exclusion of evidence of one conviction, and not another. The trial court must balance the lapse of time and the nature of the crime to determine whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant. Moreover, it is appropriate for the trial court in exercising its discretion to consider intervening convictions between the past conviction and the crime for which the defendant is being tried. When a defendant has an extensive prior criminal record, indicating that he has contempt for the bounds of behavior placed on all citizens, his burden should be a heavy one in attempting to exclude all such evidence. A jury has the right to weigh whether one who repeatedly refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen. If a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible. [Id. at 144-145, 386 A.2d 378].
In the final analysis, "N.J.S.A. 2A:81-12 does not mandate that every prior conviction be admitted into evidence to affect credibility." Id. at 147, 386 A.2d 378. However, the trial judge should admit a prior conviction "unless in his discretion he finds that its probative force because of its remoteness, giving due consideration to relevant circumstances such as the nature of the crime, and intervening incarcerations and convictions, is substantially outweighed so that its admission will create undue prejudice." Id.
Review of the record here reveals that the trial court did not mistakenly exercise its discretion in admitting defendant's 1977 murder convictions. First, defendant has had a long history of criminal activity dating back to 1957. In fact, defendant was incarcerated for life for the murder convictions and was serving this sentence when he escaped from Leesburg State Prison. *545 Certainly, the jury was entitled to know this information in assessing defendant's truthfulness in the event he testified. Secondly, murder is a very serious offense which clearly has a bearing on defendant's truthfulness and credibility. Finally, the convictions were not so distant in time as to be prejudicial. At the time of the trial the convictions were only ten years old. See State v. McBride, 213 N.J. Super. 255, 267, 517 A.2d 152 (App.Div. 1986); State v. Harkins, 177 N.J. Super. 397, 401, 426 A.2d 1053 (App.Div. 1981).

IV.
Morris contends that the trial court erred in imposing a two-and-one-half year period of parole ineligibility as part of his five-year sentence. We disagree. Morris was convicted of escape, a crime of the third degree, and, was, therefore, subject to a sentence of imprisonment of between three and five years. N.J.S.A. 2C:43-6a(3). Additionally, he was subject to a minimum term during which time he would be ineligible for parole. N.J.S.A. 2C:43-6b, which authorizes minimum terms, provides:
b. As part of a sentence for any crime, where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, as set forth in subsections a. and b. of 2C:44-1, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a., or one-half of the term set pursuant to a maximum period of incarceration for a crime set forth in any statute other than this code, during which the defendant shall not be eligible for parole; provided that no defendant shall be eligible for parole at a date earlier than otherwise provided by the law governing parole.
In deciding to impose a period of parole ineligibility,
the court balances the same aggravating and mitigating factors used to determine the appropriate sentence. The standard for balancing the factors, however, is different. In determining the appropriate sentence, the court must decide whether there is a preponderance of aggravating or mitigating factors. When determining parole ineligibility, by contrast, the court must be "clearly convinced that the aggravating factors substantially outweigh the mitigating" factors. The different standard reflects the fact that "[p]eriods of parole ineligibility are the exception and not the rule. They are not to be treated as routine or commonplace." [State v. Kruse, 105 N.J. 354, 359, 521 A.2d 836 (1987)].
*546 We are satisfied that the sentence complied with the provisions of the New Jersey Code of Criminal Justice. The trial court found three aggravating factors and no mitigating factors. Its findings in this regard are amply supported by the record. The aggravating factors clearly justified the imposition of the parole ineligibility term. While the trial court did not explicitly employ the precise language of N.J.S.A. 2C:43-6b in imposing the parole ineligibility term, it is plain from the record that the trial court was clearly convinced and explicitly found that the aggravating factors substantially dominated in this case. In State v. McBride, 211 N.J. Super. 699, 705, 512 A.2d 583 (App.Div. 1986), we upheld a period of parole ineligibility under similar circumstances, stating:
Defendant correctly observes that the trial judge did not expressly find that he was "clearly convinced that the aggravating factors substantially outweigh the mitigating factors" as required by N.J.S.A. 2C:43-6(b) before a period of parole ineligibility may be imposed. A year after this sentence was imposed, we emphasized the need for trial judges to make that finding. State v. Martelli, 201 N.J. Super. 378, 385 [493 A.2d 70] (App.Div. 1985). Our concern, however, was that trial judges articulate the relative weight they assign to the aggravating and mitigating factors in order that we may be assured that they followed the statutory guidelines, not that judges ritualistically recite a statutory formula. Where, as here, the judge could properly have found, as he did, that there are no mitigating factors, it is clear that the aggravating factors substantially predominate.
See also State v. D'Amato, 218 N.J. Super. 595, 608, 528 A.2d 928 (App.Div. 1987), certif. den., 110 N.J. 170, 540 A.2d 169 (1988); State v. Porter, 210 N.J. Super. 383, 396-397, 510 A.2d 49 (App.Div.), certif. den., 105 N.J. 556, 557, 523 A.2d 191 (1986).
In sum, the sentence was neither manifestly excessive nor unduly punitive. It does not represent a miscarriage of justice or shock the judicial conscience. See State v. O'Donnell, 117 N.J. 210, 215-216, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-388, 393-394, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-365, 471 A.2d 370 (1984).

*547 V.
Finally, defendant Saxon contends that the trial court erred in sentencing him to an extended term and imposing a four-year period of parole ineligibility. Again, we disagree.
The imposition of an extended term is a complicated process which involves the interplay of several rules and statutes. The prosecutor begins the process by filing a motion for an extended sentence with the trial court within 14 days of the guilty plea or the jury's verdict pursuant to R. 3:21-4(d). This rule provides:
Extended or Enhanced Term of Imprisonment; Sentence Pursuant to N.J.S.A. 24:21-29 or N.J.S.A. 2C:35-8. A motion pursuant to N.J.S.A. 2C:44-3 or N.J.S.A. 2C:43-6f for the imposition of an extended term of imprisonment, or a motion for enhancement of a sentence pursuant to N.J.S.A. 24:21-29 or a motion for enhanced sentence pursuant to N.J.S.A. 2C:35-8, shall be filed with the court by the prosecuting attorney within 14 days of the entry of defendant's guilty plea or of the return of the verdict. Where the defendant is pleading guilty pursuant to a negotiated disposition, the prosecutor shall file the motion prior to the plea. A copy of the motion shall be served on the defendant and defendant's counsel. For good cause shown the court may extend the time for filing the motion. The sentence shall include a determination as to whether the defendant was convicted and sentenced to an extended term of imprisonment as provided in N.J.S.A. 2C:43-7, 2C:44-3 and 2C:44-6e, N.J.S.A. 2C:43-6f or whether the defendant was being sentenced pursuant to N.J.S.A. 24:21-29, or N.J.S.A. 2C:35-8, and the commitment or order of sentence which directs the defendant's confinement shall so specify.
Following the motion, the sentencing court must then look to the criteria set forth in N.J.S.A. 2C:44-3 to determine if an extended term is warranted. In order to sentence a defendant to an extended term, the trial court must first find that defendant is either a persistent offender, a professional criminal or that defendant committed the crime for profit.
Once this determination is made, the trial court looks to N.J.S.A. 2C:43-7 for the range of extended terms. In the case of a third degree crime, for example, the range is five to ten years. When the aggravating and mitigating factors are in equipoise, the presumptive extended term is imposed pursuant to N.J.S.A. 2C:44-1f. In the case of a third degree crime, the presumptive extended term is seven years. A higher or lower *548 base term is imposed depending on the balance of aggravating and mitigating factors. State v. Dunbar, 108 N.J. 80, 88, 527 A.2d 1346 (1987).
Finally, the trial court must look to N.J.S.A. 2C:43-7b to determine whether a minimum term is in order. Although not mandated by the statute, before the trial court can impose a parole disqualifier under this section, it must be clearly convinced that the aggravating factors substantially outweigh the mitigating factors. Id. at 92, 527 A.2d 1346.
To summarize the above principles:
Practical application of the Code's extended sentencing scheme thus involves a multi-step process. First, the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met. Second, the court must determine whether to impose an extended sentence. Third, it must weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence. Finally, it must determine whether to impose a period of parole ineligibility. [Id. at 89, 527 A.2d 1346].
* * * * * * * *
Under N.J.S.A. 2C:44-3, the court may, on application by the prosecutor, sentence a first-, second-, or third-degree offender to an extended term, but only if it finds that the defendant is either (1) a persistent offender, (2) a professional criminal, or (3) a hired criminal.

N.J.S.A. 2C:43-7 prescribes the range of extended sentences. For example, a first-degree extended sentence shall be "for a specific term of years * * * between 20 years and life imprisonment." N.J.S.A. 2C:43-7a(2). N.J.S.A. 2C:44-1 sets forth a presumptive sentence for each extended term. In the case of a first-degree offense the presumed extended term is fifty years. N.J.S.A. 2C:44-1(f)(1). (The Code has specific prescriptions for certain offenses such as murder, kidnapping, and aggravated assault.) Higher or lower base terms are imposed depending on the balance of aggravating and mitigating factors. N.J.S.A. 2C:44-1f. Finally, N.J.S.A. 2C:43-7b authorizes the imposition, on the extended term, of a period of parole ineligibility not to exceed one-half of the term, or twenty-five years in the case of life imprisonment. In imposing parole ineligibility the sentencing court "shall specifically place on the record the aggravating factors set forth in this section which justify the imposition of a minimum term." N.J.S.A. 2C:44-1f(1). [Id. at 87-89, 527 A.2d 1346 (some citations omitted)].
Here, the prosecutor filed a motion for an extended term based on defendant's 1980 conviction for two counts of armed robbery and 1982 conviction for theft. The trial court granted *549 the State's motion, finding that defendant was a persistent offender under N.J.S.A. 2C:44-3a. The trial court then imposed a base term of eight years and a parole disqualifier of four years, basing its sentence upon its finding of three aggravating factors and no mitigating factors.
In our view, the sentence imposed was proper. The base term of eight years was within the range authorized by N.J.S.A. 2C:43-7a(4) and was justified by the aggravating factors. Additionally, the parole disqualifier of four years was properly imposed pursuant to N.J.S.A. 2C:43-7b. Moreover, this sentence was neither manifestly excessive nor unduly punitive. The imposition of the eight-year term with a four-year period of parole ineligibility does not represent a miscarriage of justice nor shock the judicial conscience.
Accordingly, the judgments of conviction and the orders of commitment under review are affirmed.