# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0304-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

M.A., JR.,

     Defendant-Appellant.

_____

Argued May 24, 2022 – Decided October 4, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 15-12-1349.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

Kyle A. Petit, Assistant Prosecutor, argued the cause for respondent (Angelo J. Onofri, Mercer County Prosecutor, attorney; Laura Sunyak, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

After defendant, M.A., pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), he was sentenced to an eight-year term of imprisonment with a four-year term of parole ineligibility. He appeals the trial court's orders denying his motion to suppress, and barring use of the defense of necessity at trial. Defendant also appeals his sentence, arguing that the sentencing court failed to find certain mitigating factors and that resentencing is required in order to account for the youth mitigating factor under N.J.S.A. 2C:44-1(b)(14). We affirm the trial court's order denying the suppression motion, reverse the trial court's order barring the necessity defense, and remand for trial.

I.

The record reveals the following undisputed facts. A Lawrence Township police officer, Jose Corado, testified for the State. On the evening of June 23, 2015, at approximately 8:47 p.m., Officer Corado pulled over a blue four-door Acura after noticing that one of its front headlights was not working. He exited his patrol car and approached the Acura's passenger side window on foot. He observed a male driver and a female passenger in the

2

front seats. Out of concern for his safety, the officer asked the driver to lower the tinted rear windows. Once the windows were lowered, he observed two male passengers in the rear seat of the vehicle.

The officer stood by the front passenger window. Before requesting the driver's credentials, Officer Corado observed that the female in the front passenger seat was behaving in an unusual manner, while nervously smoking a cigarette and blowing the smoke in his direction.

After obtaining the driver's credentials, Officer Corado smelled an odor of burnt marijuana coming from the car. He was able to identify the odor based on his experience and training. He next asked the driver if he could search the vehicle, and the driver consented in writing. The officer elected to wait for backup before removing all four individuals from the car.

Eventually defendant, one of the rear seat occupants, was searched by Officer Corado, who felt a "hard metallic object" between defendant's legs. The officer pulled out a small black .22 caliber Beretta pistol, with a single bullet in the chamber and no magazine. Officer Corado also searched the other individuals and the car, but he discovered no other weapons or contraband. Defendant was arrested.

A-0304-19

After his arrest, defendant gave a statement to the police. He said he had assisted the police in a previous matter and as a result of that cooperation, other persons in the community were "after him." Defendant explained that he had been beaten up twice and shot at once since cooperating with law enforcement. Seeking protection from law enforcement, defendant contacted the detective and the prosecutor from the case he cooperated in, however, he received no assistance. Defendant explained he wanted to move out of state to avoid the threats, however, he was unable to do so because he was on probation.

Defendant changed residences in the community where he lived, moving from his mother's house to his cousin's house in an attempt to avoid the constant threats on his person. He admitted that he had obtained the Beretta pistol just days before, and that he acquired it in response to being assaulted and fired upon. Defendant told the interviewing detective that he knew the pistol contained only one bullet. He stated that he intended to fire the bullet at a potential assailant and flee, if assaulted for a fourth time.

A grand jury indicted defendant on second degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and fourth degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f). The trial court denied defendant's motion to

suppress evidence and later granted the State's motion to preclude the statutory defense of necessity.

On June 25, 2018, defendant pled guilty. The second weapons charge was dismissed. After sentencing, defendant appealed, and now makes the following arguments:

> POINT I
>
> THE OFFICER'S REQUEST, WITHOUT A HEIGHTENED AWARENESS OF DANGER, FOR THE DRIVER TO ROLL DOWN THE TINTED REAR WINDOWS SO THAT HE COULD SEE INTO THE PASSENGER COMPARTMENT FOR HIS SAFETY, VIOLATED [M.A.'s] RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES.
>
> POINT II
>
> THE MOTION COURT ERRED IN GRANTING THE STATE'S MOTION TO PRECLUDE THE NECESSITY DEFENSE.
>
> POINT III
>
> BECAUSE [M.A.] WAS TWENTY-ONE YEARS OLD AT THE TIME THE OFFENSE WAS COMMITTED, RESENTENCING IS REQUIRED TO CONSIDER THE RECENTLY ENACTED YOUTH MITIGATING FACTOR, N.J.S.A. 2C:44-1B (14). (NOT RAISED BELOW)

A-0304-19

POINT IV

THE SENTENCING COURT ERRED IN FAILING TO FIND MITIGATING FACTORS SUPPORTED BY CREDIBLE EVIDENCE IN THE RECORD, AND TO CONSIDER MITIGATING FACTORS RAISED BY THE DEFENSE. (NOT RAISED BELOW)

II.

The scope of review of a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "In reviewing a motion to suppress, an appellate court 'must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.'" State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). An appellate court gives deference to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 243.

We will not disturb a lower court's determination unless it is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412 (2014) (quoting Elders, 192 N.J. at 244). However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Smith, 212 N.J. 365, 387 (2012).

6

The appellate court gives deference to the evidentiary rulings made by a trial court absent an abuse of discretion.  State v. Garcia, 245 N.J. 412, 430 (2021); State v. Rochat, 470 N.J. Super. 392, 453 (App. Div. 2022).  The appellate court will not disturb a trial court's determination "unless the evidentiary ruling is 'so wide of the mark' that it constitutes a 'clear error in judgment.'"  Garcia, 245 N.J. at 430 (quoting State v. Medina, 242 N.J. 412, 430 (2020)).  "A trial court's 'discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting State v. Cope, 224 N.J. 530, 554-55 (2016)).

## III.

## A.

In his first appeal point, defendant offers a narrow argument, one which, as best we can discern, was not raised with the trial court.  Recognizing that we are not bound to address arguments on appeal not raised in the trial court, State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006), we proceed using a plain error standard.

Defendant now contends Officer Corado had no articulable basis to direct the driver to lower the rear tinted windows, and that the court erred by

A-0304-19

not applying the heightened awareness of danger standard first articulated in State v. Smith, 134 N.J. 599 (1994), and reaffirmed by the Supreme Court in State v. Mai, 202 N.J. 12 (2010) and State v. Bacome, 228 N.J. 94 (2017), to the officer's instruction.  Defendant's theory now is that without that initial act by the officer, the chain of events which led to the gun seizure would not have occurred.

The State argues before us that reasonableness is the relevant standard to use when analyzing Officer Corado's initial act that led to the warrantless search.  Reasonableness is "determined by assessing, on the one hand, the degree to which [a warantless search] intrudes on an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  State v. Davila, 203 N.J. 97, 111 (2010) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)).

At the argument on the suppression motion, the court rejected defendant's argument that the heightened awareness of danger standard should apply, concluding that Smith and its progeny could be distinguished on the facts.  Instead, the court applied the doctrine of exigent circumstances, citing State v. Walker, 213 N.J. 281 (2013), to support denial of the motion.  The trial court found Officer Corado was justified in removing the occupants from

the Acura and conducting a warrantless search of the people and the car, concluding that "the smell of burnt marijuana under the total circumstances created a heightened and reasonable suspicion that an offense was being committed." Ibid.

Since defendant now only seeks review of Officer Corado's direction to the driver to roll down the rear windows, we conclude that the standard by which we should evaluate the officer's actions is one of reasonableness, not heightened awareness or exigency.

"The touchstone of the Fourth Amendment and Article I, [P]aragraph 7 of the New Jersey Constitution is reasonableness." State v. Hathaway, 222 N.J. 453 (2015) (citations omitted). To determine whether an officer's conduct was objectively reasonable, the court must consider "the facts known to the law enforcement officer at the time of the search." State v Caronna, 469 N.J. Super. 462, 495 (App. Div. 2021) (quoting State v. Handy, 206 N.J. 39, 46-47 (2011)). In evaluating the sufficiency of the basis for a stop courts "consider the totality of the information available to the officer at the time of the conduct." State v. Myers, 442 N.J. Super. 287, 294 n.2 (App. Div. 2015) (quoting State v. Presley, 436 N.J. Super. 440, 456 (App. Div. 2014)).

A-0304-19

Based on the totality of the information available to him at the time of the stop, Officer Corado's concern for his own safety was reasonable.  The stop occurred at nighttime, and the Acura's rear tinted windows prevented Corado from seeing who, if anyone, was in the rear seat of the car.  Although this was supposed to be a routine traffic stop for a broken headlight, "traffic stops may be dangerous encounters" and "the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer."  Maryland v. Wilson, 519 U.S. 408, 413 (1997).  Corado's inability to quickly ascertain how many passengers were in the vehicle posed a safety risk, and his direction to lower the rear windows was an appropriate precaution to take.  Such an action required no heightened awareness of danger or exigent conditions to validate it.  The officer's actions simply had to be objectively reasonable.  We find no plain error in the court's denial of the motion to suppress.

## B.

Defendant next argues that the trial court erred by granting the State's motion to bar defendant from asserting the defense of necessity.  Defendant argues he was faced with a "choice-of-evils" decision in which he risked being killed if he did not break the law and possess the Beretta to protect himself.  The State argues that the defense of necessity is not applicable under State v.

10

<u>Kelly</u>, 118 N.J. 370 (1990) [1], because defendant was not faced with "spontaneous and compelling danger." <u>Id.</u> at 386.

N.J.S.A. 2C:3-2(a), Necessity and Other Justifications in General, states:

> Conduct which would otherwise be an offense is justifiable by reason of necessity to the extent permitted by law and as to which neither the code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

---

[1] In <u>Kelly</u>, the defendant was previously in an abusive relationship with her ex-boyfriend. 118 N.J. at 373. Although at the time of the altercation the couple was no longer together, the defendant had tried involving the police previously and received no help. <u>Id.</u> at 374. After an argument ensued between the pair, the ex-boyfriend threatened defendant to not come by a specific corner he frequented. <u>Id.</u> at 373. Due to her previous communications with the police, she did not contact them about this specific threat. <u>Id.</u> at 374. The defendant and the ex-boyfriend lived only a few blocks away and she believed there would be no way to avoid him. <u>Ibid.</u> The defendant decided to arm herself with a razor before leaving her home that day because of her ex-boyfriend's threat. <u>Ibid.</u> On her way home she crossed the aforementioned corner and an altercation ensued between the pair, which resulted in the defendant slashing the ex-boyfriend with the razor. <u>Ibid.</u> The court noted that the policy justification of allowing the police to handle the situation rather than encouraging an environment where citizens take matters into their own hands supported their holding that defendant was not entitled to the necessity defense. <u>Id.</u> at 386. In oft-cited dicta, the court stated, "it would appear that the availability of necessity as a justification for the immediate possession of a weapon, as with self-defense, is limited only to cases of spontaneous and compelling danger." <u>Ibid.</u>

The common-law defense of necessity requires a defendant to show:

> (1) There must be a situation of emergency arising without fault on the part of the actor concerned;
>
> (2) This emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;
>
> (3) This emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and
>
> (4) The injury impending from the emergency must be of sufficient seriousness to out measure the criminal wrong.
>
> [State v. Romano, 355 N.J. Super. 21, 29 (App. Div. 2002) (citing State v. Tate, 194 N.J. Super. 622, 628 (App. Div. 1984), rev'd on other grounds, 102 N.J. 64 (1986)).]

The trial court, leaning heavily upon Kelly in its analysis, made findings. Accepting defendant's statement to detectives that he had been shot at and beaten up because he had cooperated with police, the court nonetheless concluded that defendant could not avail himself of the necessity defense. The court, citing Kelly, concluded the defense was available "only in cases of spontaneous action in response to immediate compelling danger."

12

Acknowledging that defendant had unsuccessfully sought help from the police in stopping the ongoing threat, the court reasoned that defendant's answer was not to arm himself, citing the public policy rationale given by the Kelly Court for rejecting use of the necessity defense in that case: "[t]he answer lies in making law enforcement more responsive so that the embattled person does not face the Draconian choice of bearing arms or withstanding the onslaught of abuse." Kelly, 118 N.J. at 387.

Our state courts have not addressed the applicability of the necessity defense to the circumstances presented here. See State v. Tate, 194 N.J. Super. 622 (Law Div. 1984) (examining necessity's applicability to the unauthorized use of medicinal marijuana); State v. Morris, 242 N.J. Super. 532, 535 (App. Div. 1990) (examining necessity's applicability to an escape from a prison due to conditions); Romano, 355 N.J. Super. at 23-24 (examining necessity's applicability to defendant's DWI charge received after attempting to escape attackers). However, some federal courts have analyzed the defense of justification[2] and have fact patterns similar to the record before us. See

---

[2] The four elements of the defense of justification under federal law are similar but not identical to the four elements of necessity set forth in State v. Romano. They are:

Gomez, 526 F.4d at 775 (defendant entitled to present justification defense to the jury after assisting authorities with criminal investigation and failing to receive help when receiving death threats as a result of his assistance); United States v. Alston, 526 F. 3d 91 (3d Cir. 2008) (defendant was not entitled to present justification defense because verbal threats and their failure to seek assistance from authorities did not meet the four factors).

We find these cases, particularly the federal ones, instructive but not determinative. The New Jersey fact patterns are either inapposite or not compelling as to the third necessity factor, while the federal cases are factually aligned, but employ a slightly different legal standard to reach their conclusion.

We find that the best approach to employ in determining whether to permit the necessity defense to be used at trial is to analyze the record using

---

> (1) [the person] was under unlawful and present threat of death or serious bodily injury; (2) [the person] did not recklessly place himself in a situation where [they] would be forced to engage in criminal conduct; (3) [the person] had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.
>
> [United States v. Gomez, 92 F.3d 770 (9th Cir. 1996).]

14

the common-law factors firmly established in our caselaw. Romano, 355 N.J. Super. at 29. We carefully examine the record to consider whether circumstances beyond "spontaneous action in response to immediate compelling danger" exist which would support the "availability of necessity as a justification for the immediate possession of a weapon . . . ." Kelly, 118 N.J. at 386. We conclude such circumstances exist.

The record shows defendant cooperated with the police in a previous investigation, going so far as to wear a wire. By doing so, he assisted police in performing their duty to protect the public. Through no fault of his own, his cooperation with the police led to him being beaten up twice and fired upon in his own community. Defendant was acutely aware that other individuals in the community wanted to hurt or kill him. We find more than sufficient evidence in the record to conclude that the threat to defendant was "imminent and compelling," and raised a reasonable expectation in the defendant that he would suffer physical injury, if not death.

Defendant's plea to law enforcement for assistance went unanswered. He tried to move out of state to avoid the threat to his life, however he was unable to do so. Defendant also changed his local residence to avoid encounters with his attackers, which didn't work, as he was attacked outside

15

his new home. Consequently, he faced a crisis with no opportunity to avoid repeated assaults until he was severely injured or killed. The record also shows that defendant did not obtain the Beretta until after someone had attempted to shoot him.

There is sufficient credible evidence in the record for a jury to find that each of the Romano elements have been satisfied, and that this record represents circumstances beyond the "spontaneous action" language of Kelly which can support a necessity defense.

As a result, the trial court mistakenly exercised its discretion in barring the necessity defense. State v. R.Y., 242 N.J. at 65-66 (quoting Cope, 224 N.J. at 554-55). The oft-cited dicta in Kelly regarding the limits of the necessity defense does not relieve a trial court from its obligation to apply facts in the record to the four necessity factors to determine if the defense should be presented to the jury.

Because of the error in barring the defense, we vacate the guilty plea and sentence and remand to the trial court for further proceedings.

Affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0304-19