211 N.J. Super. 699 (1986)
512 A.2d 583
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES MCBRIDE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 30, 1986.
Decided July 14, 1986.
*700 Before Judges BRODY and DREIER.
Thomas S. Smith, Jr., Acting Public Defender, attorney for appellant (Steven T. Kearns, Designated Counsel, of counsel and on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Michael Weinstein, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
*701 Defendant was convicted of second-degree robbery. N.J.S.A. 2C:15-1(a)(1). The State presented evidence from which the jury could have found that defendant and his two accomplices descended on their victim in broad daylight as he was walking along the sidewalk on his way to the Newark train station. Defendant beat the man to the ground while the others emptied his pockets and took his wrist watch. About 40 minutes later, while the police were driving the victim and an eyewitness through the downtown neighborhood where the crime had occurred, the witnesses spotted defendant on the sidewalk holding the victim's watch in his hand. The police thereupon arrested him. The trial judge imposed a 10-year term of imprisonment, 5 years to be served before parole eligibility. Defendant contends that his conviction should be reversed because the assistant prosecutor improperly suggested to the jury that they draw an unfavorable inference against him for failing to produce witnesses to corroborate his testimony. Alternatively, defendant argues that we must reduce the term of imprisonment because the judge did not follow the statutory sentencing guidelines.
A prosecuting attorney may ask a jury to draw an adverse inference from a defendant's failure to call a witness only if the trial judge first has found, out of the presence of the jury, that the witness is within the defendant's power to produce and that the witness's "testimony would [be] superior to that already utilized in respect to the fact to be proved." State v. Carter, 91 N.J. 86, 127 (1982). See State v. Hickman, 204 N.J. Super. 409, 414 (App.Div. 1985). Even though the witness may also be available to the State, the adverse inference may nevertheless be drawn against the defendant if he "has superior knowledge of the identity of [the] witness or of what testimony might be expected...." Carter, 91 N.J. at 127-128.
Defendant testified that five minutes before he was arrested he had purchased the victim's watch on the street for "$10.00  *702 $15.00." When, on cross-examination, he testified that a "few" people had witnessed the sale, the assistant prosecutor asked whether he had asked any of the witnesses to confirm his story in the presence of the arresting officer. Defendant replied that he had made no such inquiry because he was "quite sure everybody would have minded their own business" and he "didn't take the opportunity to find out." Asked whether it had crossed his mind to ask the witnesses for confirmation, defendant replied, "It could have."
Defendant further testified that while he did not know the seller's identity, he knew his appearance and was "sure" that the seller was often on the street corner where he had purchased the watch from him. He acknowledged that he "might" have a friend who knows the seller, but he had never asked anybody to help him identify or find the person who had sold him the watch. At that point the assistant prosecutor asked, "Do you think if he [defendant's friend] was here today that would clear all this up?" Defendant's attorney objected to the question and the objection was sustained. The questioning proceeded with no further comment on this point.
After the attorneys had finished questioning defendant, the judge asked him why he had not put on the watch before he was arrested. Defendant responded, "It was just in my hand. I was talking to a female." He was asked no further questions.
In his summation, the assistant prosecutor commented upon the foregoing portions of defendant's testimony as follows:
Now, look at the testimony of the defendant himself. We asked him:
"Where did you get the watch?"
"Oh, I just got it. I bought it from somebody."
"Who was that somebody?"
He didn't know who it was. That person didn't come here to testify for him.
He said he had some people who might know who he was. They might be able to find him if he truly had bought the watch from someone. But as you and I both know he didn't buy it from anybody. He took it from [the victim] before he beat him or after he beat him. Excuse me.
....

*703 Tell me, ladies and gentlemen, if you had just bought a watch are you going to stand there for five minutes with it in your hand? I don't think so. What do you think? Where is this mysterious woman that, all of a sudden, somebody heard about? Maybe she knew something about 
Defendant's attorney then interrupted with the only objection he raised to the summation:
[DEFENDANT'S ATTORNEY]: Objection. The defense has no burden to prove anything or bring anybody here, Judge.
THE COURT: Yes. I will sustain the objection.
The summation proceeded with no further comment on the subject.
In this appeal defendant contends that the judge sua sponte should have instructed the jury that they may not draw a "negative inference" from "defendant's ... failure to call any witnesses that might have been present when the defendant was arrested." We agree that the assistant prosecutor should not have implied by his questioning and in his summation that an adverse inference be drawn from defendant's failure to call any alleged witness to his purchase of the watch. Before such an inference may be suggested, Carter requires that the trial judge first find in the particular case that the inference may fairly be drawn. That was not done here.
We will not order a new trial, however, because from our careful review of this record we are satisfied that the error was harmless because the jury could fairly have drawn the inference. The reason for requiring an advance ruling from the trial judge is to be sure that the absent witness is "within the power of the party to produce and that his testimony would have been superior to that already utilized in respect to the fact to be proved." Carter at 91 N.J. at 127.
While it is true that there was no direct evidence that defendant had the power to produce the witnesses, defendant admitted that he deliberately made no effort to learn the identity of the alleged seller from someone who may have known him and defendant was given a full opportunity to *704 explain why he did not produce any of the witnesses to the alleged sale.
There is no doubt that the testimony of any of these witnesses would have been superior to defendant's testimony that he had just purchased the watch on the street, and there is no doubt that defendant knew the superiority of that testimony. His possession of the watch so soon after the theft was almost conclusive evidence of guilt. His only chance for acquittal was to convince the jury that he had purchased and not stolen the watch. His testimony alone on the point would obviously be suspect. Corroboration in these circumstances was vital. The jury could properly have concluded that defendant's failure to pursue known leads to find and secure corroborating witnesses was evidence that there were none. Also the judge made it clear in his charge that the burden of proving every element of the crime was on the State and that no burden of proof was on defendant. See State v. Singleton, 158 N.J. Super. 517, 527 (App.Div. 1978), certif. den. 79 N.J. 470 (1978).
Defendant also argues that the judge failed to identify or weigh mitigating and aggravating circumstances when he imposed the maximum sentence for this crime. The record is otherwise.
The trial judge determined that there were no mitigating factors. Defendant offers none.
The judge emphasized that defendant used excessive force to accomplish this theft and inflicted gratuitous bodily injuries upon the victim. Defendant testified that he is six feet six and one-half inches tall, weighs 251 pounds and is an amateur heavyweight boxer. He was aided in this theft by two other men. Defendant beat the victim, who was 56 years old, nearly senseless and broke one of his teeth. These circumstances implicate aggravating factors N.J.S.A. 2C:44-1(a)(1) and (2).
The judge also noted the need to deter defendant and others from violating the law, aggravating factor N.J.S.A. 2C:44-1(a)(9). Although this 20-year-old defendant had no prior *705 criminal convictions, the adult presentence report, to which defendant took no exception, discloses that while released on bail for this offense he was arrested and charged with another robbery and with receiving stolen property. As a juvenile he was adjudicated delinquent for shoplifting, sodomy and lewdness. In connection with the last two juvenile offenses he was committed to the Youth Correctional Institution Complex, apparently for a violation of probation. The foregoing is not only evidence of the need to deter defendant from violating the law, but also evidence of the risk that he will commit another offense, aggravating factor N.J.S.A. 2C:44-1(a)(3). The need to deter others is obvious. Defendant committed this brazen robbery in the full light of day in the downtown section of our largest city. It epitomizes the kind of violent street crime that has terrorized those who live and work in our large cities.
Defendant correctly observes that the trial judge did not expressly find that he was "clearly convinced that the aggravating factors substantially outweigh the mitigating factors" as required by N.J.S.A. 2C:43-6(b) before a period of parole ineligibility may be imposed. A year after this sentence was imposed, we emphasized the need for trial judges to make that finding. State v. Martelli, 201 N.J. Super. 378, 385 (App.Div. 1985). Our concern, however, was that trial judges articulate the relative weight they assign to the aggravating and mitigating factors in order that we may be assured that they followed the statutory guidelines, not that judges ritualistically recite a statutory formula. Where, as here, the judge could properly have found, as he did, that there are no mitigating factors, it is clear that the aggravating factors substantially predominate.
Having found that the trial judge properly applied the statutory guidelines, we cannot override his sentence unless "in applying those guidelines to the relevant facts the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors." State v. Roth, 95 N.J. 334, 366 (1984). The sentence *706 is severe, but it is within reason given the weight of the aggravating factors and the absence of mitigating factors.
The judgment of conviction is affirmed.