744 A.2d 640

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. THOMAS
F. KROMPHOLD, DEFENDANT–RESPONDENT.

Argued September 28, 1999—Decided February 1, 2000.

*Gerard C. Sims, Jr.,* Deputy Attorney General, argued the case for the appellant (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney).

*Dennis A. Cipriano,* argued the cause for respondent (*Mr. Cipriano,* attorney; *James I. Peck IV,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

The primary issue in this appeal is whether the court that sentenced defendant Thomas Kromphold impermissibly considered elements of the offense of aggravated assault as aggravating factors for sentencing purposes. In an unpublished opinion, the Appellate Division reduced defendant's aggregate sentence, holding that the trial court "double-counted" evidence of the extent of defendant's intoxication by considering that evidence as an aggravating factor for sentencing after having authorized the jury to consider the same evidence in determining whether the State had proved recklessness, an element of the charged offense of second-degree aggravated assault. We affirm in part, reverse in part, and remand the matter to the Law Division for further proceedings in conformance with this opinion.

## I

On the evening of March 1, 1996, Shin Ru Shih and Piin–Chau Suen, wife and husband, and their friends, Taonan Tsai and Jenfei Shih, also wife and husband, were traveling northbound on De-Mott Lane in Franklin Township. Suen, the driver of the car, observed vehicle headlights heading directly for their car. That vehicle, operated by defendant Thomas Kromphold, was traveling southbound in the northbound lane. Suen was unable to avoid the other vehicle, and the cars collided head-on.

Franklin Township police officers responded to the scene and arrested defendant after he admitted he was intoxicated and after he failed roadside tests administered by the officers. A blood sample taken shortly after defendant's arrest revealed that defendant's blood alcohol level was .382 percent, more than triple the legal limit.

All of the occupants of the Suen vehicle were transported to the hospital after receiving treatment at the scene. Tsai fractured his left thumb, requiring surgery and causing him to miss one month of work. Suen suffered whiplash. The two women in the car suffered severe, permanent injuries.

Shin Ru Shih suffered a broken collarbone and fractured ribs. She also had to have her spleen removed, markedly increasing her vulnerability to infections. Consequently, she experienced seven infections in less than one year. One of those infections occurred during pregnancy and produced such a high fever that Shin Ru Shih again was hospitalized. Prior to the accident Shin Ru Shih worked as a biochemist in a laboratory. Since the accident, she has had to change professions because of the increased risk of infection attributable to her splenectomy.

Jenfei Shih, who was seated behind the driver, sustained the most severe injuries. She lost all vision in her left eye, and sustained severe eyelid damage and permanent facial scarring. Jenfei Shih's skull and left elbow were fractured. Following the accident, Jenfei Shih, who was twenty-six weeks pregnant at the time of the accident, began to have uterine contractions and cervical dilation. She gave birth prematurely in the thirty-second week of her pregnancy. Testimony from her doctor indicated that the premature birth probably resulted from the trauma caused by the collision. Jenfei Shih's child was born functionally underdeveloped and was undergoing therapy at the time of defendant's sentencing.

Defendant was charged with three counts of second-degree aggravated assault based on the separate injuries sustained by Shin Ru Shih, Jenfei Shih, and Tsai. The aggravated assault statute, *N.J.S.A.* 2C:12–1b(1), provides that a person is guilty of second-degree aggravated assault if he or she "[a]ttempts to cause serious bodily injury to another, or ... under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury."

At trial, the victims and Franklin Township police officers testified for the State. The State also produced a forensic scientist who testified concerning defendant's blood alcohol level and the effect it had on his ability to drive.

Defendant, who was thirty-three years old at the time of trial, testified on his own behalf. He stated that he began drinking at

age ten and that he "was drinking every day" prior to the accident. Defendant testified that he was an alcoholic and that he regularly drove under the influence of alcohol.

As part of the jury charge, the court explained the elements of aggravated assault. Concerning the element of recklessness, the court instructed the jury that defendant's level of intoxication at the time of the accident could be considered:

> Now, as you know, evidence has been introduced of defendant's intoxication at the time of the alleged offence. The level of intoxication has the tendency to prove the existence of any recklessness. Specifically, if you should find a .10 percent *or higher* level of blood alcohol, you may consider this as a factor in determining whether the defendant was reckless at the time of the alleged crime.
>
> In determining the element of recklessness, you are permitted to draw an inference that an individual who drives while intoxicated is consciously disregarding the risk of accident.
>
> . . .
>
> You may consider the degree of intoxication in determining whether circumstances manifesting extreme indifference to the value of human life existed.
>
> In determining whether the defendant acted recklessly under circumstances manifesting extreme indifference to the value of human life, you may consider the nature of the acts themselves and the severity of the resulting injuries.

Following the trial, the jury found defendant guilty of the two counts of second-degree aggravated assault involving injuries to Shin Ru Shih and Jenfei Shih. The jury acquitted defendant of the aggravated assault of Tsai, but found defendant guilty of the lesser-included offense of assault by auto, contrary to *N.J.S.A.* 2C:12–1c. Following his conviction, defendant pled guilty to related motor vehicle charges not implicated in this appeal.

At sentencing, the trial court found four aggravating factors: *N.J.S.A.* 2C:44–1a(1) (the nature and circumstances of the offense and defendant's role therein); *N.J.S.A.* 2C:44–1a(2) (the gravity and seriousness of the harm inflicted on the victims); *N.J.S.A.* 2C:44–1a(3) (the risk defendant will commit another offense); and *N.J.S.A.* 2C:44–1a(9) (the need to deter defendant and others). The trial court found two mitigating factors: *N.J.S.A.* 2C:44–1b(7) (defendant's lack of a prior criminal record); and *N.J.S.A.* 2C:44–1b(10) (the possibility that defendant will respond affirmatively to probationary treatment).

Concerning the first aggravating factor, the nature and circumstances of the offense and defendant's role therein, the court stated that

[t]he defendant's blood alcohol reading was [an] incredibly high .382. He probably never even knew of the curve warning sign, probably never even knew that there was [an] advisory 30 mile an hour speed limit, probably never even knew he went over the double yellow line.

According to the defendant's testimony, he's been drinking heavily for the past 20 years, and at the time of this crash he was drinking a bottle of whiskey every day, and he would drive drunk all the time, every day, year in, year out. As I recall it, he testified he routinely drove drunk. This [c]ourt finds that this aggravating factor has enormous weight.

Concerning the second aggravating factor, the gravity and seriousness of the harm inflicted on the victims, the court found that Shin Ru Shih and Jenfei Shih "each suffered multiple serious injuries, each of which could satisfy the elements of serious bodily injury." The court found by clear and convincing evidence that the aggravating factors substantially outweighed the mitigating factors.

Based on those findings, defendant was sentenced to a ten-year term of imprisonment with five years of parole ineligibility on each of the two counts of aggravated assault. The court determined that those sentences were to run consecutively because there were multiple victims. Defendant received a concurrent eighteen-month sentence for the assault-by-auto conviction, and a concurrent term of ninety days for other Title 39 motor vehicle violations. Accordingly, defendant's aggregate sentence was twenty years with ten years parole ineligibility.

The Appellate Division affirmed defendant's convictions but modified defendant's sentence. The panel held that the sentencing court impermissibly double-counted as an aggravating factor evidence that was considered by the jury in convicting defendant of aggravated assault as defined by *N.J.S.A.* 2C:12–1b(1).

The Appellate Division rejected the trial court's finding that defendant's blood alcohol level of .382 percent supported the first aggravating factor, the nature and circumstances of the offense and defendant's role therein. The panel noted that the State relied on defendant's blood alcohol level to establish that he

recklessly caused the victims' injuries under circumstances manifesting extreme indifference to the value of human life, an element of the underlying offense, and that the trial court instructed the jury that it could consider the degree of defendant's intoxication in determining whether the State established that element.

The Appellate Division found that the second aggravating factor, the gravity and seriousness of harm inflicted on the victims, was established with regard to the assault of Jenfei Shih, but not Shin Ru Shih. In determining the presence of that factor, the panel adopted the definition of "serious bodily injury" contained in the aggravated assault statute, *N.J.S.A.* 2C:11–1(b): "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Concerning Jenfei Shih, the panel found that because she suffered multiple serious bodily injuries, one of those injuries could have been considered by the jury as an element of aggravated assault and another of those injuries could have been considered by the sentencing court as an aggravating sentencing factor. The Appellate Division found, however, that the application of the gravity-and-seriousness-of-harm factor to the assault of Shin Ru Shih resulted in double-counting. The panel determined that the loss of her spleen satisfied the serious bodily injury prong of the aggravated assault statute, but concluded that her fractured collarbone and fractured ribs did not qualify as serious bodily injuries. Thus, unlike the assault of Jenfei Shih, the assault of Shin Ru Shih did not result in an additional injury that could be considered for purposes of that aggravating factor.

Exercising its original jurisdiction pursuant to *R.* 2:10–5, the Appellate Division modified defendant's sentence. Concerning defendant's conviction for the aggravated assault of Shin Ru Shih, the panel found that the record did not support the sentencing court's findings concerning the aggravating factors and that the remaining aggravating factors, the risk defendant would commit another offense and the need to deter, did not outweigh the

mitigating factors. Accordingly, the Appellate Division reduced defendant's sentence on that count from ten years imprisonment with five years parole ineligibility to a term of seven years with no period of parole ineligibility. Finding the sentence on defendant's conviction for the aggravated assault of Jenfei Shih to be "harsh" and "arguably unreasonable," the Appellate Division modified the sentence on that count to an eight-year term with three years of parole ineligibility. The panel affirmed the consecutive nature of those sentences, noting "the principle that there should be no free crimes." The panel also affirmed the concurrent eighteen-month sentence for the assault-by-auto conviction, resulting in an aggregate term of fifteen years imprisonment with three years of parole ineligibility.

We granted the State's petition for certification. 158 *N.J.* 74, 726 *A.*2d 937 (1999). We now consider whether defendant's sentence is the product of double-counting and whether the gravity and seriousness of harm factor, *N.J.S.A.* 2C:44–1a(2), is properly evaluated under the definition of "serious bodily injury" contained in the aggravated assault statute, *N.J.S.A.* 2C:11–1(b).

## II

The New Jersey Code of Criminal Justice requires a sentencing court to consider aggravating and mitigating circumstances in determining the appropriate sentence for a person convicted of a crime. *N.J.S.A.* 2C:44–1a and b. The Code confers on a sentencing court the limited power to depart from the presumptive terms in *N.J.S.A.* 2C:44–1f(1) if it finds a preponderance of aggravating or mitigating factors. *State v. O'Connor,* 105 *N.J.* 399, 406–08, 522 *A.*2d 423 (1987). A sentencing court that departs from the presumptive terms prescribed by *N.J.S.A.* 2C:44–1f(1) must nevertheless sentence within the presumptive ranges set forth in *N.J.S.A.* 2C:43–6a. *O'Connor, supra,* 105 *N.J.* at 407, 522 *A.*2d 423.

The dominant, if not paramount, goal of the Code is uniformity in sentencing. *State v. Pillot,* 115 *N.J.* 558, 571, 560 *A.*2d 634

(1989). That goal "is realized through a structured scheme of presumptive sentences applicable to defined classes of crime, and through limitations on judicial discretion, primarily in terms of statutorily-prescribed aggravating or mitigating factors." *Ibid.* (citing *State v. Jarbath*, 114 *N.J.* 394, 400, 555 *A.2d* 559 (1989)).

In *State v. Hodge*, 95 *N.J.* 369, 375, 471 *A.2d* 389 (1984), we observed that the Code is offense-oriented and that if the Legislature had not intended such an orientation,

there would have been little need for the crafting and grading of offenses in the Code. Skeptics saw this process as the principal obstacle to making the punishment fit the crime, describing as "heroic reform" the creation of a system that must "define offenses with a morally persuasive precision that present laws do not possess." Zimring, *Making the Punishment Fit the Crime: A Consumer's Guide to Sentencing Reform*, in *Sentencing* 327, 330–31 (H. Gross and A. von Hirsch eds.1981). Yet that is precisely what the Legislature did in fashioning the Code:

Crimes would be defined with precision and specific offenses would carry specified sentences, along with *lists of aggravating and mitigating circumstances that could modify the penalty.*

[Zimring, *supra*, at 330.]

[*Hodge, supra*, 95 *N.J.* at 375, 471 *A.2d* 389 (emphasis added).]

In *State v. Yarbough*, 100 *N.J.* 627, 633, 498 *A.2d* 1239 (1985), we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence. We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. *Ibid.* If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.

The prohibition against using evidence both for sentencing purposes and to establish an element of an offense has been recognized by this Court and the Appellate Division. In *State v. Pineda*, 119 *N.J.* 621, 627–28, 575 *A.2d* 855 (1990), we held that because death was an element of the crime of death by auto,

*N.J.S.A.* 2C:11–5(b), the victim's death could not be considered as an aggravating factor for sentencing purposes. Similarly, in *Jarbath, supra,* 114 *N.J.* at 404, 555 *A.*2d 559, we held that to consider a child's death as support for the seriousness-and-gravity-of-harm aggravating factor constituted impermissible double-counting because "the death of the child itself was an element of the offense of second-degree manslaughter." *See also Pillot, supra,* 115 *N.J.* at 577, 560 *A.*2d 634 (holding that where use of BB gun elevated robbery from second-degree to first-degree crime, use of weapon could not be considered aggravating factor for sentencing purposes); *State v. Yarbough,* 195 *N.J.Super.* 135, 143, 478 *A.*2d 432 (App.Div.1984) (holding that where age of victim is factor that makes sexual assault against her crime of first degree, victim's age may not be used as aggravating factor), *remanded for resentencing on other grounds,* 100 *N.J.* 627, 645–46, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986); *State v. Link,* 197 *N.J.Super.* 615, 620, 485 *A.*2d 1069 (App.Div.1984) (holding that where victim's status as police officer was essential element of offense, that status could not be used as aggravating factor for sentencing purposes), *certif. denied,* 101 *N.J.* 234, 501 *A.*2d 911 (1985).

In *State v. Mara,* 253 *N.J.Super.* 204, 601 *A.*2d 718 (1992), the Appellate Division considered the sentencing court's use of the defendant's intoxication as an aggravating factor for sentencing purposes. In that case, the defendant's automobile struck a vehicle that was parked on the side of the road, injuring the driver who had exited the vehicle to check the engine. *Id.* at 208, 601 *A.*2d 718. In a bench trial, the trial court found that the defendant was "highly intoxicated," and that he failed to stop his vehicle after the collision. *Id.* at 209, 601 *A.*2d 718. Breathalyzer tests indicated that at the time of the accident the defendant's blood alcohol level was between .15 and .16 percent. *Id.* at 210, 601 *A.*2d 718. Following the defendant's conviction for second-degree aggravated assault, the sentencing court found that the nature and circumstances of the offense constituted an aggravating factor because the defendant deliberately became drunk, chose to drive

on an express highway, and left the scene of the accident despite pleas from the passenger of the other vehicle to stop. *Id.* at 215, 601 *A.*2d 718. The Appellate Division rejected that aggravating factor, holding that it was "improper to consider recklessness and conduct manifesting indifference to human life as an aggravating factor because they are elements of the aggravated assault." *Ibid.*

### III

An appellate court may modify a sentence only if the sentencing court was "clearly mistaken." *Jarbath, supra,* 114 *N.J.* at 401, 555 *A.*2d 559. That standard is satisfied "if the sentencing guidelines were not followed or applied" or "if the aggravating and mitigating factors found by the sentencing court were not based on sufficient evidence in the record." *Ibid.* (citing *State v. Roth,* 95 *N.J.* 334, 364–65, 471 *A.*2d 370 (1984)). "Consideration of an inappropriate aggravating factor violates the guidelines and thus is grounds for vacating sentence." *Pineda, supra,* 119 *N.J.* at 628, 575 *A.*2d 855 (citing *State v. O'Donnell,* 117 *N.J.* 210, 215, 564 *A.*2d 1202 (1989)). Although appellate courts possess original jurisdiction over sentencing, the exercise of that jurisdiction "should not occur regularly or routinely; in the face of a deficient sentence, a remand to the trial court for resentencing is strongly to be preferred." *Jarbath, supra,* 114 *N.J.* at 410–11, 555 *A.*2d 559.

### A

Concerning the element of recklessness, the trial court instructed the jury that defendant's level of intoxication at the time of the accident could be considered: "[I]f you should find a .10 percent *or higher* level of blood alcohol, you may consider this as a factor in determining whether the defendant was reckless at the time of the alleged crime." The court also charged the jury that it was permitted to "consider the degree of intoxication in determining whether circumstances manifesting extreme indifference to the value of human life existed." In its sentencing role,

the court primarily supported the presence of the first aggravating factor, the nature and circumstances of the offense and defendant's role therein, *N.J.S.A.* 2C:44–1a(1), by noting that "[t]he defendant's blood alcohol reading was [an] incredibly high .382."

After reviewing the record, we agree with the Appellate Division that the sentencing court double-counted the defendant's level of intoxication by supporting the first aggravating factor with the same evidence that the jury was authorized to consider in determining whether the State had proved "recklessness" or "circumstances manifesting extreme indifference to the value of human life." Although defendant could have been convicted for driving while intoxicated with a blood-alcohol level of .10 percent, *N.J.S.A.* 39:4–50, the presence of that blood-alcohol level does not necessarily equate to reckless behavior that manifests extreme indifference to the value of human life. Accordingly, the trial court properly permitted the jury to consider the extent of defendant's intoxication on the issue of defendant's recklessness. Defendant's convictions of second-degree aggravated assault required a jury finding of recklessness that, pursuant to the trial court's instruction, could have been based on the jury's reliance on defendant's extraordinary level of intoxication. That jury finding, however, precluded the sentencing court from using defendant's level of intoxication as an aggravating factor.

### B

██ The sentencing court also found that the gravity and seriousness of the harm inflicted on the victims, *N.J.S.A.* 2C:44–1a(2), was an aggravating factor with regard to the assaults of both Shin Ru Shih and Jenfei Shih. The Appellate Division reversed in part, finding that the assault of Jenfei Shih, but not the assault of Shin Ru Shih, produced an additional injury that could be considered as an aggravating factor.

In evaluating the sentencing court's application of the "seriousness of harm" aggravating factor, the Appellate Division restricted

the use of that factor by importing the definition of "serious bodily injury" contained in the aggravated assault statute, *N.J.S.A.* 2C:11–1(b). That section defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Ibid.*

Other opinions that address the harm to the victim as an aggravating factor have considered the severity of the victim's injuries without reference to a specific statutory standard. *See, e.g., State v. Dunbar,* 108 *N.J.* 80, 96, 527 *A.*2d 1346 (1987) (affirming sentencing court's finding that gravity and seriousness of harm was aggravating factor because victims of robbery were elderly and defendant unnecessarily knocked down owner of jewelry store causing severe injuries to back and neck); *State v. Colella,* 298 *N.J.Super.* 668, 676, 690 *A.*2d 156 (App.Div.) (holding that evidence of victim's loss of eye supported finding that gravity and seriousness of harm was aggravating factor), *certif. denied,* 151 *N.J.* 73, 697 *A.*2d 545 (1997); *State v. Kelly,* 266 *N.J.Super.* 392, 395–96, 629 *A.*2d 1355 (App.Div.1993) (affirming sentencing court's finding that gravity and seriousness of harm was aggravating factor because defendant threatened victims with baseball bat); *Mara, supra,* 253 *N.J.Super.* at 214, 601 *A.*2d 718 (affirming sentencing court's finding that gravity and seriousness of harm was aggravating factor because victim was unable to work and "walked with a decided limp at the time of sentencing"); *State v. McBride,* 211 *N.J.Super.* 699, 704, 512 *A.*2d 583 (App.Div.1986) (finding that gravity and seriousness of harm was aggravating factor where defendant beat victim "nearly senseless and broke one of his teeth"). Further, psychological harm, which may be a material factor in sentencing for violent crimes, has been considered relevant under this aggravating factor, *State v. Logan,* 262 *N.J.Super.* 128, 132, 620 *A.*2d 431 (App.Div.), *certif. denied,* 133 *N.J.* 446, 627 *A.*2d 1150 (1993), but is not included in the statutory definition of "serious bodily injury."

Those applications of *N.J.S.A.* 2C:44–1a(2) suggest that that aggravating factor and the statutory definition of "serious bodily injury" in *N.J.S.A.* 2C:11–1(b) address different concepts. When a sentencing court considers the harm a defendant caused to a victim for purposes of determining whether that aggravating factor is implicated, it should engage in a pragmatic assessment of the totality of harm inflicted by the offender on the victim, to the end that defendants who purposely or recklessly inflict substantial harm receive more severe sentences than other defendants. Although the definition of "serious bodily injury" in *N.J.S.A.* 2C:11–1(b) clearly contemplates a level of injury severe enough to trigger the 1(a)2 aggravating factor, "the gravity and seriousness of the harm" encompassed by that aggravating factor is a broader and less precise concept that permits the exercise of sound discretion by the sentencing court in determining whether the extent of the harm to the victim warrants application of that aggravating factor. We also note that the Legislature did not attempt to link the harm implicated by that aggravating factor with the definition of "serious bodily injury" in *N.J.S.A.* 2C:11–1(b). See *GE Solid State, Inc. v. Director, Division of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993) ("[W]here the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.").

■ Accordingly, we are thoroughly persuaded that the Law Division's reliance on the 1(a)2 (harm to victim) statutory aggravating factor is fully supported by the evidence in the record. The serious nature of the injuries sustained both by Shin Ru Shih and Jenfei Shih clearly justified the trial court's application of the 1(a)2 aggravating factor.

## IV

The sentencing court improperly double-counted defendant's level of intoxication as an aggravating factor, but properly considered the harm to the victims. The Appellate Division, on the other hand, properly held that defendant's level of intoxication

may not be double-counted as an aggravating factor, but improperly relied on the statutory definition of "serious bodily injury" in its analysis of the harm to the victims as an aggravating factor. Moreover, we are persuaded that this is not an instance in which appellate modification of the sentence is appropriate. We therefore remand to the sentencing court for resentencing. See *Jarbath, supra,* 114 *N.J.* at 410–11, 555 *A.*2d 559.

The judgment of the Appellate Division is affirmed in part, reversed in part, and the matter remanded to the Superior Court, Law Division for resentencing in conformity with this opinion.

*For affirmance in part; reversal in part; and remandment*— Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG, and VERNIERO—7.

*Opposed*—None.