**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4928-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.S.,

    Defendant-Appellant.

_____

Argued July 2, 2018 – Decided July 30, 2018

Before Judges Carroll and Rose.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-05-0673.

John W. Douard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John W. Douard, of counsel and on the brief).

Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant M.S.[1] appeals from his convictions and sentence for sexually assaulting his nineteen-year-old stepdaughter, J.S. Based on our review of the evidence in light of the applicable law, we affirm defendant's convictions, vacate his sentence, and remand for resentencing.

I.

We summarize the facts and procedural history pertinent to this appeal from the trial record. Defendant was indicted by a Middlesex County Grand Jury for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7) (count one), and third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count two). Defendant was found guilty of the lesser-included charge of second-degree sexual assault by physical force, N.J.S.A. 2C:14-2(c)(1) on count one, and count two as charged. The trial court sentenced defendant to an eight-year prison term with an eighty-five percent parole ineligibility period pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant is also subject to Megan's Law reporting requirements, N.J.S.A. 2C:7-1 to -23, and parole supervision for life, N.J.S.A. 2C:43-6.4.

---

[1] Because defendant and the victim are related, we use initials to protect the victim's privacy.

The evidence adduced at trial established that in October 2010, defendant and J.S.'s mother had been married for seventeen years, but had separated recently. On October 14, 2010, J.S. attended a family party at a restaurant in Woodbridge. Defendant was in attendance. Having consumed several shots of hard liquor within one hour prior to the party, and another two alcoholic beverages at the party, J.S. was so intoxicated that she vomited. J.S. told defendant she did not want her mother to see her in that condition, so he took her to his home.

J.S. was "blacking in and out[,]" and needed defendant's assistance to walk. She told the jury:

> I remember being placed on the bed in the
> middle of the bed. And then I remember my
> dress coming up over me and my hands going up
> and then falling . . . like just dead weight.
> They just fell. And then I remember his hand
> coming up from the back and unclasping my bra.
>
> . . . .
>
> I felt hands and my dress coming up over my
> head and my arms, . . . my dress was being
> taken off of me.
>
> . . . .
>
> At first [defendant's arms] were hugging me,
> and then as time went on, they got tighter and
> I remember trying to fight out of it  And then
> all of [a] sudden, . . . I felt a penis, felt
> a penis head searching and that's when I
> started squirming. And then . . . I felt it
> go in, I felt half of it go in.

A-4928-15T2

> And that's when I started fighting and I started screaming ["]no, no,["] and I kept pushing back my elbow to try to loose[n] myself from the arms, and finally, like, when I felt it go in, . . . I hit it once, that last time, . . . and then it all went away.

Upon awakening the following morning, J.S. was naked, alone in defendant's bed. She noticed her clothing was "folded neatly and nicely," which is not something she would have done in her drunken state. Because J.S. did not feel sore, she was not sure whether "what [she] felt happened to [her] the night prior was . . . a dream or if it really happened." Defendant entered the bedroom and, although J.S. did not question him about the encounter, defendant volunteered that she had been "fighting with the sheets and . . . kept saying [']no.[']"

When J.S. returned home, she called her best friend and told her what happened. J.S. then told her mother. On October 17, 2010, the incident was reported to the Woodbridge Police Department, and J.S. was examined by Danielle Peloquin, a sexual assault nurse examiner with the Middlesex County Rape Crisis Intervention Center. The swab taken from J.S.'s vagina tested positive for the presence of semen. That specimen and a buccal swab taken from defendant were submitted for DNA testing.

Lynn Crutchley testified on behalf of the State as an expert in forensic DNA testing and analysis. In addition to performing

4

traditional "STR DNA testing," on the samples obtained from defendant and J.S., Crutchley performed "Y-STR testing[,]" which focuses "strictly on male DNA." Y-STR testing is useful where, as here, there is a prevalence of female DNA in the vaginal samples.

The results of the traditional STR testing were inconclusive as to the presence of defendant's DNA. However, Crutchley testified defendant and "all of his paternal male relatives cannot be excluded as possible contributors to the Y-STR DNA profile obtained." Crutchley also indicated that profile "is expected to occur no more frequently than . . . 1 in 1,444 of the Hispanic population."

Peloquin testified that sexual assault examinations are generally conducted "within five days" of the incident "[b]ecause evidence will disappear just by natural body functions[,]" including showering and urination. J.S. testified she did not have consensual sex with defendant. Nor did she have sex with anyone else between the day of the incident and the day she reported it to the police.

Defendant testified and claimed he removed J.S.'s dress, because it was soaked in vomit, before helping her into his bed. He denied sexually assaulting J.S. Following his conviction, he maintained his innocence during his evaluation, at the Adult

Diagnostic Treatment Center in Avenel, to determine whether he was eligible for sentencing pursuant to N.J.S.A. 2C:47-1 (Avenel report).

On appeal, defendant raises the following points for our consideration:

POINT I

THE PROSECUTOR FALSELY AND REPEATEDLY CLAIMED, OVER OBJECTION, THAT M.S.'S SEMEN WAS FOUND CONCLUSIVELY IN J.S.'S VAGINA, DESPITE THE STATE'S EXPERT'S TESTIMONY THAT M.S. COULD NOT BE EXCLUDED AS THE SOURCE OF THE SEMEN, THEREBY COMMITTING EGREGIOUS PROSECUTORIAL MISCONDUCT. THE JUDGE DENIED M.S.'S MOTION FOR A MISTRIAL, THEREBY VIOLATING HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS. U.S. CONST. AMEND. VI, XIV; N.J. CONST. ART. [I], ¶[¶] 1, 10.

POINT II

THE EIGHT-YEAR SENTENCE, WITH AN [EIGHTY-FIVE PERCENT] PERIOD OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE, IN LIGHT OF M.S.'S CLEAN PRIOR RECORD, CLOSE FAMILY TIES, AND STABLE EMPLOYMENT RECORD.

II.

A.

We view prosecutorial misconduct under the harmless error standard. State v. R.B., 183 N.J. 308, 330 (2005). To determine whether a prosecutor's improper comments in summation warrant reversal, we assess whether the impropriety was "so egregious that it deprived the defendant of a fair trial." State v. Jackson, 211

N.J. 394, 409 (2012) (quoting <u>State v. Frost</u>, 158 N.J. 76, 83 (1999)). In making this assessment, we "consider[] 'the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred.'" <u>Ibid.</u> (quoting <u>State v. Timmendequas</u>, 161 N.J. 515, 575 (1999).

However, the prosecution's duty to achieve justice does not forbid a prosecutor from presenting the State's case in a "vigorous and forceful" manner. <u>R.B.</u>, 183 N.J. at 332 (quoting <u>Frost</u>, 158 N.J. at 82). "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." <u>Ibid.</u> (quoting <u>Frost</u>, 158 N.J. at 82); <u>see also</u> <u>State v. Mayberry</u>, 52 N.J. 413, 437 (1968) ("So long as he stays within the evidence and the legitimate inferences therefrom the Prosecutor is entitled to wide latitude in his summation.").

"Thus, '[t]o justify reversal, the prosecutor's conduct must have been "clearly and unmistakably improper," and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" <u>State v. Wakefield</u>, 190 N.J. 397, 438 (2007) (alteration in original) (quoting <u>State v. Papasavvas (I)</u>, 163 N.J. 565, 625 (2000)).

Here, during cross-examination of defendant, the prosecutor suggested J.S. had stopped communicating with him because of "the

fact that [his] semen was found in her vagina." Defense counsel made a timely objection, and the prosecutor withdrew the question. Nonetheless, at the conclusion of defendant's testimony, and again following the close of evidence, defendant moved for a mistrial, claiming the prosecutor's comment was contrary to the evidence and "scientifically inaccurate." When that motion was denied, defendant sought to preclude the prosecutor from arguing in summation that defendant's semen was found in J.S.'s vagina. The trial judge denied the applications, finding the prosecutor's anticipatory comment was a "fair inference in the testimony." We agree.

As he did before the trial judge, defendant now argues the prosecutor improperly drew inferences for the jury through her repeated comments misconstruing the scientific evidence presented. Initially, he cites her statement: "Semen, semen, semen, which matched defendant, was found in her vagina." However, defendant fails to cite the prosecutor's comment immediately preceding that snippet, i.e., "The DNA evidence in this case is overwhelming corroboration that what [J.S.] remembered about this sexual assault actually happened." Defendant also claims the prosecutor improperly "drew the inference for the jury: that even the statistically correct way to describe the DNA test results were

of no matter because nobody else could have been the semen donor."
We disagree.

The prosecutor's comments, when read together, are "legitimate inferences" from the evidence in the record. See Wakefield, 190 N.J. at 457 (recognizing reviewing court's consider the prosecutor's summation in its entirety in order to ascertain its "fair import"). Specifically, J.S. testified she did not have sex with anyone other than defendant on the date of the incident or throughout the three days prior to her examination by Peloquin. That testimony is consistent with Peloquin's five-day window for the viability of forensic evidence after sexual conduct, and Crutchley's testimony that defendant was a possible source of the semen present in J.S.'s vagina. Thus, the scientific evidence presented by the State, together with J.S.'s statements that defendant was the only person she had sex with during the period of time at issue, support the inference that defendant's sperm was present in J.S's vagina.

In sum, the snippets quoted by defendant in his merits brief do not allow a full appraisal of the State's summation, which properly drew "legitimate inferences" from the evidence adduced at trial. Mayberry, 52 N.J. at 437. We, therefore, disagree with defendant that the prosecutor's comments warranted reversal where,

as here, they were not "clearly and unmistakably improper." Papasavvas (I), 163 N.J. at 625.

B.

We review a "trial court's 'sentencing determination under a deferential [abuse of discretion] standard of review.'" State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)); see also State v. Pierce, 188 N.J. 155, 169-70 (2006) ("On appellate review, the court will apply an abuse of discretion standard to the sentencing court's explanation for its sentencing decision within the entire range."). We affirm a sentence if: (1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were based on competent, credible evidence in the record; and (3) the application of the law to the facts does not "shock[] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). When reviewing a trial court's sentencing decision, we will not "substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014).

At sentencing, the court found aggravating factors two, N.J.S.A. 2C:44-1(a)(2) ("the victim of the offense was particularly vulnerable"); three, N.J.S.A. 2C:44-1(a)(3) (risk of committing another offense); four, N.J.S.A. 2C:44-1(a)(4)

10

("defendant took advantage of a position of trust"); and nine, N.J.S.A. 2C:44-1(a)(9)[2] (specific and general deterrence). The court found mitigating factors seven, N.J.S.A. 2C:44-1(b)(7) (the absence of a prior criminal record), and nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude "indicate that he is unlikely to commit another offense"). The court found, generally, the aggravating factors outweighed the mitigating factors, and rejected defendant's request that the court impose a sentence in the range one degree lower than the second-degree range for sexual assault.

In sum, defendant argues his eight-year sentence is excessive, and the court should have found mitigating factors seven and nine outweigh aggravating factor nine, thereby supporting a five-year term of imprisonment, subject to NERA. Defendant also claims the court should have found and weighed in his favor, mitigating factors eight, N.J.S.A. 2C:44-1(b)(8) ("defendant's conduct was the result of circumstances unlikely to recur"), and eleven N.J.S.A. 2C:44-1(b)(11) (defendant's

---

[2] In his merits brief, defendant did not include aggravating factor nine in the court's findings. We note the judge amended the judgment of conviction (JOC) on October 26, 2015 to address, among other things, the omission of aggravating factor nine from defendant's initial JOC.

imprisonment "would entail excessive hardship to himself or his dependents"), further supporting a five-year sentence.

We first address defendant's argument that the court inadequately justified finding aggravating factor two on the sexual assault conviction. In finding this factor, the judge recounted J.S.'s testimony that

> she was physically incapable of moving. She was physically incapacitated. And it was in that situation that this defendant took her to his apartment and took advantage of her. He knew she was drunk. He knew she was young. He knew that her consciousness was going in and out during that night.

"[Aggravating factor two] compels 'a pragmatic assessment of the totality of harm inflicted by the offender on the victim.'" State v. Anthony, 443 N.J. Super. 553, 575-76 (App. Div. 2016) (alteration in original) (quoting Lawless, 214 N.J. at 610.) "It focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance at the time of the crime." Ibid. (quoting Lawless, 214 N.J. at 611).

In our view, the record supports a finding of aggravating factor two as to defendant's sexual assault conviction where, as here, J.S. not only was drunk and young, but also, as defendant's stepdaughter, she trusted him to take care of her in that

12                                                      A-4928-15T2

intoxicated state. As the trial judge stated, there was "overwhelming" trial testimony that J.S. was "severely, severely intoxicated. And that warrants the finding of aggravating factor number two." We agree.

We part company with the trial court, however, to the extent aggravating factor two was applied to the aggravated criminal sexual contact conviction. In that respect, the court "double-counted."

A sentencing court may not base its finding of aggravating factor two solely on the fact that the harm contemplated by the statute proscribing the criminal conduct occurred. See State v. Kromphold, 162 N.J. 345, 356-58 (2000). A court engages in impermissible double counting when "elements of a crime for which a defendant is being sentenced" are "considered as aggravating circumstances in determining that sentence." Id. at 353 (citing State v. Yarbough, 100 N.J. 627, 633 (1985)). "[A] sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." Fuentes, 217 N.J. at 74-75 (citing Yarbough, 100 N.J. at 645).

Here, with consent of counsel, the trial judge instructed the jury that the elements of aggravated criminal sexual contact included: "at the time of the sexual contact, the victim was physically helpless," and that defendant "knew or should have

known that under the circumstances [she] was physically helpless." Because physical helplessness is both an element of the offense for which defendant was sentenced, and the basis for the court's determination that aggravating factor two applied, the court impermissibly double-counted.

We have considered and reject defendant's contention that the court erred in finding aggravating factor four. We are satisfied that the court's finding of aggravating factor four is supported here, where defendant raised J.S. as his daughter for seventeen years and violated that "position of trust" at a time when she was too incapacitated to resist his advances. Contrary to defendant's contention, aggravating factor four is not limited to a violation of a public trust. Cf. State v. Mosch, 214 N.J. Super. 457, 463 (App. Div. 1986) (recognizing aggravating factor four was inapplicable in the apparent stranger-to-stranger burglary and sexual assault offense for which the defendant was convicted).

We next consider defendant's argument that the court's findings of aggravating factor three and mitigating factor nine are "mutually exclusive." If the two factors are based on different criteria, they are not logically exclusive of each other. Here, however, the court determined both factors "essentially cancel each other out." In reaching that conclusion, the court found:

> I think this was a crime of opportunity. He would take that opportunity if presented again. So that would militate for me to find aggravating factor number three, the risk that the defendant would commit another offense. But I also believe if the opportunity does not present itself, that this person would not go out of his way to commit crime. So in the [c]ourt's mind it's kind of an equipoise, aggravating factor three and mitigating factor nine, they almost cancel each other out.

While it is possible to find contradictory factors, the trial judge used the flip-side of the same criteria to find both factors. Further, aggravating factor three is not supported by the evidence here, where the present offense was an isolated incident and the Avenel report indicates "the absence of a clear finding of repetitive and compulsive sexual behavior." In light of the record, including defendant's lack of prior criminal history,[3] the court improperly found aggravating factor three.

Based upon the court's improper finding of aggravating factor two on the aggravated criminal sexual contact conviction, and aggravating factor three on both convictions, we are constrained to vacate defendant's sentence and remand for resentencing without consideration of those aggravating factors. Further, on remand, the court should set forth the aggravating and mitigating factors

---

[3] Subsequent to his arrest for the present offense, defendant was arrested on separate charges resulting in: (1) a dismissed temporary restraining order; and (2) the imposition of a fine for a simple assault conviction.

that apply on the sexual assault conviction, and those that apply on the aggravated criminal sexual contact conviction. Because we are remanding for resentencing, it is unnecessary to address defendant's contention that the sentence imposed was excessive and we express no opinion regarding it.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4928-15T2